IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JUDY EICHHOLZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-4374-CV-C-NKL |
| ) | |
| VON HOFFMANN CORP., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

ORDER

Plaintiff Judy Eichholz ("Eichholz") resigned from Defendant Von Hoffmann Corporation ("Von Hoffmann") on December 27, 2004, following a series of conflicts with other employees. She subsequently sued her former employer for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. Pending before the Court is Von Hoffmann's Motion for Summary Judgment [Doc. # 44]. For the reasons set forth below, the motion is granted.

**I.    Factual Background**

Based on the evidence before the Court, which is viewed in a light most favorable to Eichholz as the nonmoving party, a reasonable juror could believe the following facts. Eichholz was hired by Von Hoffmann in 1990 and promoted to Human Resources Coordinator at the end of 2001. Her new position included responsibility for benefits

1

administration such as COBRA, FMLA and disability claims, as well as some other administrative duties.  At all times relevant to this lawsuit, Von Hoffman has had a sexual harassment policy in place, a copy of which Eichholz received when she was first hired.  The policy provides a procedure for employees who believe they are being harassed to report such harassment to their supervisor, department head, plant manager or human resources officer.

### A.     Initial Instance of Sexual Harassment

In June 2003, Eichholz observed images of naked women on the computer of her supervisor, Steve Prosser, who was the director of human resources at Von Hoffmann's facility in Jefferson City, Missouri.  She did not inform him that she found the images offensive.  Nor did she inform the plant manager or the director of human resources for the company.  She did tell Gayle Witherbee, a co-worker whom Eichholz believed to be responsible for investigating sexual harassment claims.  Witherbee discreetly discussed the matter with Prosser, who was also her supervisor, but no further action was taken.  In August 2003, Eichholz reported the images to Tim Stumbaugh, the director of Information Technology for the Jefferson City plant, who in turn notified the proper authorities within the company.  Jefferson City's new plant manager, Richard Dunn, first learned of Eichholz's complaint in mid-August from Craig Nelson, the corporate human resources director.  A subsequent investigation into Prosser's alleged misuse of Von Hoffman computer equipment led to Prosser's resignation within a few weeks.  Dunn scolded Witherbee for not reporting Eichholz's complaint immediately.  He also

2

apologized to Eichholz for her exposure to the images on Prosser's computer and told her that sexual harassment was a serious matter and the company treated it as such. Eichholz told Dunn that she was sorry she hadn't reported seeing the images directly to him and that she had not expected Prosser to lose his job over the incident. Nevertheless, she was satisfied with the company's response and thanked Dunn for resolving the matter properly.

### B. New Leadership in the Human Resources Department

In September 2003, Heather Sneller, the Human Resources Director for Von Hoffmann's Owensville facility, was transferred to the Jefferson City facility to replace Prosser and to make that facility more efficient and responsive to the needs of the new plant manager, Richard Dunn. Sneller was not well received in Jefferson City. Most employees thought she was demanding, overly critical, and out to replace many of them with employees from the Owensville plant. Sneller instituted a new, plant-wide performance evaluation process for all employees, which included written appraisals of everyone in the HR department. Everyone was disappointed with the evaluations they received from her. Eichholz's evaluation indicated a need for improvement in a number of areas including prioritizing and organizing her work. Other employees, like Brenda Brandt, received even worse evaluations and were placed on performance improvement plans. Brandt and some other employees eventually quit.

Sneller also made several changes in job responsibilities around the facility. Sneller asked Eichholz to start her day at 7:00 a.m. instead of 8:00 a.m. three days per

3

week so that employees on the third shift would have someone in HR to ask questions of when they got off work. Eichholz was moved from being a salaried employee to being paid by the hour. Eichholz and Brenda Brandt were reprimanded for turning in time sheets with unapproved overtime. Brandt was reprimanded more than once and she, along with several other employees, eventually quit.

### C. Second Instance of Sexual Harassment

Around June 2004, Eichholz received several sexually suggestive emails from Gayle Witherbee, the same woman to whom she had originally complained about the nude photographs on Prosser's computer. Eichholz had previously sent several sexually suggestive emails herself to other Von Hoffmann employees and Witherbee may well have thought Eichholz would find the emails funny rather than offensive. Nevertheless, Eichholz did find Witherbee's emails mildly offensive and told Witherbee, who immediately stopped sending them to Eichholz. Eichholz did not report the emails to anyone else at Von Hoffmann and there is no evidence that Sneller was ever aware of the incident.

### D. Eichholz Changing Responsibilities

In March 2004, Sneller hired Debbie Gleason and assigned her the plant headcount and attendance reports, both of which had previously been Eichholz's responsibility. In October, Sneller had Eichholz and Gleason trade all their job responsibilities, ostensibly for the purpose of cross-training both employees. After the switch, Eichholz became responsible for handling attendance tracking, vacation issues, FMLA requests, the HR

4

log, and the weekly headcount report.  Gleason took over responsibility for all insurance issues, including disability claims and COBRA coverage.

Because Gleason was rarely at her desk to answer questions, employees would come to Eichholz for help and she wound up doing much of her previous work in addition to her new responsibilities.  Eventually Sneller had Eichholz and Gleason physically trade offices.

### E. Eichholz's Job Performance

Perhaps due to her increased responsibilities, Eichholz made a number of mistakes on the job.  When Sneller took over the HR department in September 2003, she noticed that Eichholz had failed to audit the insurance billing for the previous year, resulting in discrepancies in the payroll department between what was billed to employees and what their actual insurance coverage costs were.  Some of the discrepancies were the result of Eichholz's failure to submit any documentation to payroll when she enrolled an employee in the insurance program.  These discrepancies cost Von Hoffmann approximately $8,000 in premiums.  On another occasion, she failed to turn in the documentation on an employee's FMLA request, jeopardizing Von Hoffmann's compliance.  She also failed to respond in a timely manner to another employee's request for FMLA leave, which resulted in the denial of the employee's leave and an investigation by the Department of Labor.  She also made mistakes with regard to employees' insurance when she submitted insurance changes to the insurance carrier, but failed to submit the same changes to

5

payroll. As a result, one employee had money taken out of his paycheck that should not have been withheld.

Eichholz erroneously accused an employee of omitting a felony conviction from his application. She violated the confidentiality of another employee's medical issues, despite having been trained in HIPAA compliance, by sending out an e-mail to the plant regarding a bindery employee's medical condition and family history. After this incident, Richard Dunn, the Plant Manager, expressed concern to Heather Sneller about Ms. Eichholz's job performance. Dunn was also upset that Eichholz copied him on e-mails she sent to Sneller and told Sneller to deal with Eichholz's questions herself. Despite Sneller's directive not to copy Dunn on any further e-mails without her express consent, Eichholz continued to do so. She failed on more than one occasion to complete a plant headcount on time and once left the state on a business trip without completing an attendance report she was told to complete before leaving. As of November 17, 2004, she had failed to complete the HR log for four weeks. Many of these failures were the result of unrealistic deadlines set by Sneller which were impossible for Eichholz to complete.

Eichholz was also uncooperative with her co-workers and withheld information from them. Gayle Witherbee had difficulties getting information from Eichholz and reported the difficulties to Sneller. On other occasions, Eichholz had to dismiss the questions of co-workers because Sneller told her she was spending too much time answering questions from employees that should have been directed to Debbie Gleason.

6

On one occasion, Eichholz was rude to and hung up on the spouse of an employee who called with a question about insurance coverage.

Eichholz's performance evaluations were negative. Sneller rated her organization as unsatisfactory because her office was disorganized (in part due to the increased paperwork Sneller had assigned to her), which Sneller believed to have contributed to Eichholz's mistakes. Sneller rated Eichholz as "needing improvement" in business and technical knowledge even though Eichholz attended training when asked to. Sneller rated her ability to adapt as unsatisfactory because Eichholz had difficulty navigating the shared job functions she was assigned. (Sneller had the same complaint of many HR personnel.) Sneller also rated Eichholz's performance unsatisfactory in the area of cooperative relationships and found that her team effectiveness "needed improvement." She also cited Eichholz's strategic thinking and innovation as "needing improvement." Many of these negative evaluations were precipitated by Sneller's unrealistic expectations and the impossible demands she placed on Eichholz; e.g., telling her not to spend time answering questions which should have been directed to other HR personnel, and then faulting her for being uncooperative.

Eichholz had several conversations with Craig Nelson, Senior Vice President of Human Resources, about her dissatisfaction with working for Sneller, including her dissatisfaction with the performance evaluation she has received. Eichholz never mentioned to him that she believed any of Sneller's actions were motivated by retaliation for reporting the nude photos on Prosser's computer. Nor did she tell Gayle Witherbee or

7

plant manager Richard Dunn that she was being retaliated against. Although she asked Witherbee to stop sending her e-mails that she found mildly offensive, there is no indication that Sneller knew of this complaint, and Eichholz never reported the incident to anyone else at Von Hoffmann.

Eichholz applied for and was offered a secretarial position with the high school in Westphalia, Missouri, in October 2004. She resigned from Von Hoffmann on December 27, 2004.

**II.     Discussion**

Although Eichholz's one count Complaint seeks damages for "Sexual Harassment and Retaliation" in violation of Title VII, Von Hoffmann treats Eichholz's claim solely as one for retaliation in its Motion for Summary Judgment. Eichholz does not dispute this characterization in her response. Nor does she argue that summary judgment should be denied as to any separate claims for sexual harassment or hostile work environment. Moreover, the only instances of sexual harassment she alleges are seeing some nude photographs on her supervisor's computer screen (for which the supervisor was forced to resign) and some sexually suggestive e-mails sent to her by a female co-worker (who desisted when Eichholz asked her to). It is doubtful that these incidents would constitute such an objectively hostile work environment as to alter a term, privilege or condition of employment. In any event, since Von Hoffman has moved for complete (as opposed to partial) summary judgment, and since Eichholz has not raised any other basis of liability

in her response brief other than unlawful retaliation, the Court construes her complaint as seeking relief only for retaliation.

In cases lacking direct evidence of retaliation, the Court follows the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether summary judgment is warranted. *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006). The first step is to determine whether Eichholz has made out a prima facie case of retaliation by offering some evidence of (1) protected activity, (2) an adverse employment action, and (3) some causal connection between the two. *Thompson v. Bi-State Dev. Agency*, 463 F.3d 821, 826 (8th Cir. 2006).

Eichholz complained of two separate instances of sexual harassment, the nude pictures on Prosser's computer and the sexually suggestive e-mails sent to her by Witherbee. In the first instance, plant manager Dunn asked for the resignation of the offending employee and apologized to Eichholz. In the second instance, there is no evidence that anyone other than Witherbee herself was aware of the complaint. The first is clearly protected activity under Title VII, and the Court will assume the same of the second for the sake of summary judgment.

The second element, that Eichholz suffered an adverse employment action, is less clearly established. Under the standard recently announced in *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006), an adverse employment action in the context of a retaliation claim is any action that might "dissuade[] a reasonable worker from making a charge of discrimination." *Id.* at 2415. "[N]ormally petty slights, minor

9

annoyances, and simple lack of good manners will not create such deterrence." *Id.* All of the employment actions alleged to be adverse in this case were taken by Von Hoffman's new HR director, Heather Sneller, who replaced Steve Prosser after he resigned. These actions, taken over the course of sixteen months, include a shift in working hours, a reassignment of job responsibilities which amounted to a de facto increase in the amount of work Eichholz was expected to complete, a physical change of offices, constant criticism of her job performance, negative evaluations, unrealistic deadlines and expectations, and instructions not to answer certain questions from employees which led those employees to think Eichholz uncooperative. However, the Court need not determine whether a reasonable employee faced with such consequences would be dissuaded from engaging in protected activity because there is no evidence that any of these actions were causally connected to Eichholz's complaints.

Eichholz first complained about Prosser's nude photos to Witherbee in June 2003, but no action was taken at the time. She complained again to IT director Stumbaugh in August 2003, and this time Prosser was forced to resign. A month later Sneller was promoted to Prosser's position and began shaking things up at the Jefferson City plant to the dismay of all of its workers. Eichholz admits that Sneller's promotion was not itself retaliatory. Sneller's only immediate action taken against Eichholz was to ask her to come in an hour early two days per week. Eichholz herself suggested that she should come in early three days per week so she could leave earlier those days.

In March 2004, six months after Eichholz's second complaint regarding Prosser, Sneller gave several employees, including Eichholz, negative job performance evaluations. Some employees received worse evaluations than Eichholz and were placed on improvement plans. Many complained about Sneller's attitude and believed she was trying to restaff the Jefferson City plant with employees from the Owensville plant. Some employees quit in dissatisfaction with their treatment from the new HR director.

In June 2004, Eichholz made her complaint to Witherbee about the sexually suggestive emails. There is no evidence that Sneller was ever aware of this complaint. In October 2004, four months after the e-mail complaint and over a year after the pictures complaint, Sneller had Eichholz swap job responsibilities and offices with Debbie Gleason. The only evidence of any kind that any of these employment decisions, irritating as they were, had anything to do with Eichholz's complaints is that the actions were taken some time after the complaints were made. Eichholz's negative evaluation was more than half a year after her first complaint–a complaint which indirectly led to Sneller's promotion to HR director. The transfer of job responsibilities and offices occurred more than a year after the first complaint and more than four months after the second complaint of which there is no evidence that Sneller was even aware. The Eighth Circuit has repeatedly held that an interval as brief as two months between protected activity and an adverse employment action does not show causation for purposes of establishing a retaliation claim, *see Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002), and that a two-week interval was "sufficient, but barely

so," *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 833 (8th Cir. 2002). The intervals in the present case are far greater and Eichholz has offered no other evidence that the events are causally connected to her complaints about Prosser or Witherbee. Sneller was only aware of one of these complaints and it led indirectly to her promotion. Moreover, there is substantial evidence that Eichholz was treated in an equally harsh manner as several other Von Hoffmann employees who had not raised complaints about sexual harassment. Eichholz has failed to meet her burden on the third element of her prima facie case because she has offered no evidence that any adverse employment actions were causally connected to her protected activity. As she has not made her prima facie case, there is no need for the Court to address the other steps of the *McDonnell Douglas* framework.

## III. Conclusion

Accordingly, it is

ORDERED that Defendant Von Hoffmann's Motion for Summary Judgment [Doc. # 44] is GRANTED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: January 11, 2007  
Jefferson City, Missouri